CASE NO: 13-13067-DD
L.T. CASE NO.: 13-cv-20090 JAL

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

_____

PATRICIA FRANZA, as Personal
Representative of the Estate of
PASQUALE F. VAGLIO,

Plaintiff/Appellant,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian corporation,

Defendant/Appellee.

_____

APPEAL TAKEN FROM
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____

APPELLEE'S ANSWER BRIEF

_____

Darren W. Friedman, Esq.
dfriedman@fflegal.com
Marcus G. Mahfood, Esq.
mmahfood@fflegal.com
FOREMAN FRIEDMAN, P.A.
One Biscayne Tower - Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-6555
Fax: 305-374-9077
*Counsel for Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Undersigned counsel for Appellee ROYAL CARIBBEAN CRUISES, LTD. certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case.

## <u>TRIAL JUDGE</u>

United States District Judge Joan A. Lenard

United States Magistrate Judge John J. O'Sullivan

## <u>ATTORNEYS</u>

Joel M. Barnett, Esq., *Attorney for Plaintiff/Appellant*

Foreman Friedman, P.A.*, Attorneys for Defendant/Appellee*

Darren W. Friedman, Esq., *Attorney for Defendant/Appellee*

Marcus Mahfood, Esq*., Attorney for Appellee*

Philip D. Parrish, Esq., *Attorney for Plaintiff/Appellant*

Philip D. Parrish, P.A., *Attorney for Plaintiff/Appellant*

Elisha Sullivan, Esq., *Attorney for Defendant*

Waks & Barnett, P.A., *Attorney for Plaintiff/Appellant*

## PARTIES

Patricia Franza, as Personal Representative of the
Estate of Pasquale F. Vaglio, *Plaintiff/Appellant*

Royal Caribbean Cruises, Ltd.,
a Liberian corporation (RCL), *Defendant/Appellee*

## CORPORATE DISCLOSURE STATEMENT

ROYAL CARIBBEAN CRUISES, LTD. is a publicly traded company and
no other publicly held corporation owns more than 10 percent of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because the issues for determination on appeal
are governed by the well-settled principle that general maritime law does not
impose liability under the doctrine of *respondeat superior* upon a carrier or ship
owner for the negligence of a ship's doctor who treats the ship's passengers. Oral
argument would not assist the Court.

## CERTIFICATE OF TYPE SIZE AND FONT

Undersigned counsel certifies that the size and style of type used in this brief
is 14-point Times New Roman.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS......................................................ii

TRIAL JUDGE ...........................................................................................ii

ATTORNEYS..............................................................................................ii

PARTIES ....................................................................................................iii

CORPORATE DISCLOSURE STATEMENT....................................................iii

STATEMENT REGARDING ORAL ARGUMENT..........................................iii

CERTIFICATE OF TYPE SIZE AND FONT ..................................................iii

TABLE OF CONTENTS ...............................................................................iv

TABLE OF AUTHORITIES ...........................................................................vi

ISSUES PRESENTED.....................................................................................1

STATEMENT OF THE CASE AND FACTS.......................................................2

SUMMARY OF THE ARGUMENT ..................................................................4

ARGUMENT ................................................................................................5

    I.    THIS COURT SHOULD AFFIRM BECAUSE THE *BARBETTA* RULE IS CORRECT. .................................................................5

        *a.*    *General Maritime Law Applies* ................................................5

        *b.*    *The Barbetta rule is correct and there are no compelling reasons to alter the landscape of general maritime law* ...........5

    II.    *BARBETTA* PRECLUDES A CLAIM UNDER THE THEORY OF APPARENT AGENCY BECAUSE IT IS A SPECIES OF *RESPONDEAT SUPERIOR*. IF SUCH A CLAIM EXISTS, FRANZA DID NOT ADEQUATELY PLEAD ONE IN THE COURT BELOW. ...............................................................26

      *a.*     *Barbetta bars apparent agency claims as a matter of law* ......**26**

      *b.*     *The District Court properly ruled that FRANZA did not adequately plead a claim of apparent agency* .........................**28**

**CONCLUSION**........................................................................................**34**

**CERTIFICATE OF COMPLIANCE** ..................................................**34**

**CERTIFICATE OF SERVICE** ..........................................................**35**

**SERVICE LIST**....................................................................................**36**

# TABLE OF AUTHORITIES

## Cases

*Amdur v. Zim Israel Navigation Co.*,
310 F. Supp. 1033 (S.D.N.Y.1969) .............................................. 9, 11, 16, 34

*American Trucking Ass'ns, Inc. v. Larson*,
683 F.2d 787 (3d Cir. 1982) .........................................................................17

*Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Logs,*
709 F.3d 1055 (11th Cir. 2013) ....................................................................21

*Atl. Sounding Co. v. Townsend*,
557 U.S. 404 (U.S. 2009) .............................................................................22

*Balachander v. NCL (Bahamas) Ltd.*,
800 F. Supp. 2d 1196 (S.D. Fla. 2011).................................................. 14, 27

*Barbetta v. S/S Bermuda Star*,
848 F.2d 1364 (5th Cir. 1988) ..........2, 4-7, 9-13, 15-20, 23, 24, 26-28, 31, 34

*Branch v. Compagnie Generale Transatlantique*,
11 F. Supp. 832 (S.D.N.Y.1935) ....................................................................6

*Cactus Pip & Supply v. M/V Montmartre*,
756 F.2d 1103 (5th Cir. 1985) .....................................................................29

*Cargill, Inc. v. Offshore Logistics, Inc.*,
615 F.2d 212 (5th  Cir. 1980) ......................................................................17

*Carlisle v. Carnival Corp.*,
864 So.2d 1 (Fla. 3d DCA 2004).................................................................13

*Carnival Corp. v. Carlisle*,
953 So. 2d 461 (Fla. 2007) ........................................................... 7, 8, 13, 14

*Churchill v. United Fruit Co.*,
294 F. 400 (D. Mass.1923) .........................................................................6, 8

*Cimini v. Italia Crociere Int'l S.P.A.*,
    1981 A.M.C. 2674 (S.D.N.Y.1981) ...............................................................6

*Cummiskey v. Chandris, S.A.*,
    719 F. Supp. 1183 (2d Cir. 1990) ..................................................... 6, 24, 26

*De Zon v. American President Lines, Ltd.*,
    318 U.S. 660, 63 S. Ct. 814, 87 L. Ed. 1065 (1943) ....................................7

*Di Bonaventure v. Home Lines, Inc.*,
    536 F. Supp. 100 (E.D. Penn.1982)...........................................................6, 8

*Doe v. Celebrity Cruises*,
    145  F. Supp. 2d 1337 (S.D. Fla. 2001)........................................................9

*Doe v. Celebrity Cruises, Inc.*,
    394 F.3d 891 (11th Cir. 2004) ....................................................................20

*Doonan v. Carnival Corp.*,
    404 F. Supp. 2d 1367 (S.D. Fla. 2005)............................................. 8, 14, 20

*E. River S.S. Corp. v. Transamerica Delavel Inc.*,
    476 U.S. 858, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986) ...........................21

*Edmonds v. Compagnie Generale Transatlantique*,
    443 U.S. 256, 99 S. Ct. 2753, 61 L. Ed. 2d 521 (1979) ..............................22

*Executive Jet Aviation, Inc. v. City of Cleveland*,
    409 U.S. 249 (1972)..................................................................................5, 21

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471, (2008).....................................................................................22

*Fairley v. Royal Cruise Line, LTD*,
    1993 AMC 1633 (S.D. Fla. 1993) ..................................................... 9, 10, 31

*Farrell v. Royal Caribbean Cruises, Ltd.*,
    2013 U.S. Dist. LEXIS 24399 (S.D. Fla. 2013) ..................................... 28, 32

*Foremost Ins. Co. v. Richardson*,
    457 U.S. 668 (1982)........................................................................................5

*Gavigan v. Celebrity Cruises, Inc.*,
  843 F. Supp. 2d 1254 (S.D. Fla. 2011)..........................................................32

*Gillmor v. Caribbean Cruise Line Ltd.*,
  789 F. Supp. 488 (D.P.R. 1992) .....................................................................8

*Gliniecki v. Carnival Corp.*,
  632 F. Supp. 2d 1205 (S.D. Fla. 2009)............................................................8

*Hajtman v. NCL (Bahamas) Ltd.*,
  526 F. Supp. 2d 1324 (S.D. Fla. 2007)..........................................................31

*Hesterly v. Royal Caribbean Cruises*,
  515 F. Supp. 2d 1278 (S.D. Fla. 2007).............................................. 8, 14, 20

*Hill v. Celebrity Cruises, Inc.*,
  2011 U.S. Dist. LEXIS 128744 (S.D. Fla. 2011) ................................... 27, 28

*Hilliard v. Kloster Cruise, Ltd.*,
  1990 U.S. Dist. LEXIS 21035 (E.D. Va. 1990) ..............................................8

*Huang v. Carnival Corp.*,
  909 F. Supp. 2d 1356 (S.D. Fla. 2012)...................................... 19, 27, 28, 31

*Huntley v. Carnival Corp.*,
  307 F.Supp.2d 1372 (S.D. Fla. 2004).................................................... 14, 15

*In re Cent. Gulf. Lines, Inc.*,
  176 F. Supp. 2d 599 (E.D. La. 2001) ..............................................................8

*Jackson v. Carnival Cruise Lines, Inc.*,
  203 F. Supp. 2d 1367 (S.D. Fla. 2002)............................................................8

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
  513 U.S. 527, 115 S. Ct. 1043, 130 L. Ed. 2d 1024 (1995) ........................22

*Kermarec v. Compagnie Generale Transatlantique*,
  358 U.S. 625 (1959)........................................................................................5

*Knickerbocker Ice Co. v. Stewart*,
  253 U.S. 149 (1920)......................................................................................20

*Langfitt v. Federal Marine Terminals, Inc.*,
　　647 F.3d 1116 (11th Cir. 2011) ............................................................ 24, 25

*Lapidus v. NCL Am. LLC*,
　　2012 U.S. Dist. LEXIS 82720 (S.D. Fla. 2012) .............................................8

*Laubheim v. De Koninglyke Neder Landsche Stoomboot Maatschappy*,
　　107 N.Y. 228, 13 N.E. 781 (1887) .................................................................7

*Lobegeiger v. Celebrity Cruise Inc.*,
　　869 F.Supp. 2d 1356 (S.D. Fla. 2012) ...........................................................8

*Mack v. Royal Caribbean Cruises, Ltd.*,
　　838 N.E. 2d 80 (Ill. App. Ct. 2005), appeal denied,
　　850 N.E. 2d 808 (Ill. 2006), cert. denied, 127 S.Ct. 350 (2006) ....... 14, 15

*Malmed v. Cunard Line*,
　　1995 U.S. Dist. LEXIS 12256 (S.D.N.Y. 1995) .........................................10

*Mascolo v. Costa Crociere, S.p.A.*,
　　726 F. Supp. 1285 (S.D. Fla. 1989) ...............................................................9

*Metzger v. Italian Line*,
　　1976 AMC 453 (S.D.N.Y.), aff'd mem., 535 F.2d 1242 (2d Cir. 1975) ......25

*Nanz v. Costa Cruises, Inc.*,
　　1991 AMC 48 (S.D. Fla. 1990), affirmed without opinion,
　　932 F.2d 977 (11th Cir. 1991) .....................................................................26

*Nietes v. American President Lines, Ltd.*,
　　188 F.Supp. 219 (N.D. Cal. 1959)...................................................5, 9, 11-15

*Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*,
　　543 U.S. 14 (U.S. 2004) ...............................................................................22

*O'Brien v. Cunard Steamship Co.*,
　　154 Mass. 272, 28 N.E. 266 (1891)...................................................7, 26, 34

*Peavy v. Carnival Corp.*,
　　2012 U.S. Dist. LEXIS 154323 (S.D. Fla. 2012) ...........................................8

*Peterson v. Celebrity Cruises, Inc.*,
    753 F. Supp. 2d 1245 (S.D. Fla. 2010)...........................................................8

*Rader v. Johnston*,
    924 F. Supp. 1540 (D. Neb. 1996)................................................................17

*Ridley v. NCL(Bahamas) Ltd.*,
    824 F. Supp. 2d 1355 (S.D. Fla. 2010)........................................................14

*Rinker v. Carnival Corp.*,
    2010 U.S. Dist. LEXIS 144190 (S.D. Fla. 2010)...........................................8

*Rinker v. Carnival Corp.*,
    836 F. Supp. 2d 1309 (S.D. Fla. 2011).........................................................33

*Royal Caribbean Cruises, Ltd. v Jackson*,
    921 F.Supp. 2d 1366 (S.D. Fla. 2013)..........................................................8

*Sisson v. Ruby*,
    497 U.S. 358 (1990)........................................................................................5

*Suter v. Carnival Corp.*,
    2007 U.S. Dist. LEXIS 95893 (S.D. Fla. 2007)............................................8

*The Catharine*,
    58 U.S. 170 (1854)........................................................................................23

*The Great Northern*,
    251 F. 826 (9th Cir. 1918) ..............................................................................6

*The Korea Maru*,
    254 F. 397 (9th Cir. 1918) ..............................................................................6

*The Napolitan Prince*,
    134 F. 159 (E.D.N.Y.1904) ............................................................................6

*Thomas v. Carnival Corp*,
    Case No. 10-22018, DE 71 (S.D. Fla. 2011)......................................... 17-19

*U.S. v. Locke*,
    529 U.S. 89 (2000)........................................................................................21

*United States v. Reliable Transfer Co., Inc.*,
   421 U.S. 397 (1975)......................................................................22

*United States v. Sharpnack*,
   355 U.S. 286 (1958)......................................................................20

*Wajnstat v. Oceania Cruises, Inc.*,
   2011 U.S. Dist. LEXIS 10900 (S.D. Fla. 2011) ........................ 27, 30, 31, 34

*Walsh v. NCL (Bahamas) Ltd.*,
   466 F. Supp. 2d 1271 (S.D. Fla. 2006)......................................8, 14

*Warren v. Ajax Navigation Corp.*,
   1995 WL 688421 (S.D. Fla. 1995) .............................................9, 29

*Wilhelm Pudenz, GmbH v. Littlefuse Inc.*,
   177 F.3d 1204 (11th Cir. 1999) ..................................................18

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199, 116 S. Ct. 619, 133 L. Ed. 2d 578 (1996) .............................20

*Zapata v. Royal Caribbean Cruises, Ltd.*,
   2013 U.S. Dist. LEXIS 43487 (S.D. Fla. 2013)...........................................34

## **Other Authorities**

46 U.S.C. §§ 3507, 3508……………………………………………...…17, 18

Beth-Ann Erlic Herschaft,
*Cruise Ship Medical Malpractice Cases:*
*Must Admiralty Courts Steer by the Star of Stare Decisis?*
   17 Nova L. Rev. 575 (1992) …..…………………………………………...15

Michael J. Compagno,
*Malpractice on the Love Boat: Barbetta v. S/S Bermuda Star,*
14 Tul. Mar. L.J. 381 (1990)…………………………………………….…..15

Restatement (Second) of Agency Section 27…………………………………..29

Restatement (Second) of Agency Section 220…………………………………24

Robert D. Peltz,
*Has Time Passed Barbetta By?*,
     24 U.S.F. Mar. L. J. 1, 32 (2012)………………………………13,15,16

Robert D. Peltz and Vincent J. Warger,
*Medicine on the Seas*,
     27 Tul. Mar. L.J. 425, 446 (Summer 2003)……………...……….…11, 16

Thomas A. Dickerson,
*The Cruise Passenger's Dilemma:*
*Twenty-First-Century Ships, Nineteenth Century Rights,*
     28 Tul. Mar. L.J. 447 (2004)……………………………..…….…………..15

Thomas A. Gionis,
*Paradox on the High Seas: Evasive Standards of Medical Care –*
*Duty Without Standards of Care; A Call for the International*
*Regulation of Maritime Healthcare Aboard Ships,*
34 J. Marshall L. Rev. 751(2001) ...……………………………………....…15

## ISSUES PRESENTED

1.      Whether this Court should uphold the well-settled general maritime law principle that a carrier or ship owner is not vicariously liable for the negligence of a ship's doctor in his treatment of the ship's passengers?


2.      Whether a carrier or ship owner may be held liable under a theory of apparent agency for the negligence of a ship's doctor in his treatment of the ship's passengers? And if so, whether the District Court below was correct in holding FRANZA did not adequately plead a claim for apparent agency?

## STATEMENT OF THE CASE AND FACTS

FRANZA claims that the decedent, Pasquale F. Vaglio, passed away as a result of the alleged negligence of shipboard medical personnel. Although Vaglio was a passenger aboard ROYAL's ship, the *Explorer of the Seas*, he was injured while attempting to get onto a trolley ashore in Bermuda, suffering head trauma. (DE 1, ¶¶9-10).  Vaglio then went back on board the *Explorer of the Seas* where he saw the ship's medical personnel. (*Id*. at ¶11). That same day, Vaglio was transferred to a Bermuda hospital (*Id*. at ¶¶13, 15). Vaglio was subsequently airlifted to a second hospital where he remained in intensive care until he passed away one week later. (*Id*. at ¶17).

FRANZA, in her capacity as personal representative of the Estate of Vaglio has asserted claims against ROYAL for (I) Negligent Medical Care and Treatment; (II) Negligence of ROYAL Based Upon Apparent Agency; and, (III) Negligent Hiring, Retention and Training by ROYAL. (DE 1). ROYAL filed a Motion to Dismiss the Complaint and Strike Plaintiff's Demand for Jury by Trial arguing *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988) precluded FRANZA's claims of Negligence Medical Care and Treatment and Apparent Agency as a matter of law, and additionally that FRANZA did not adequately plead her Apparent Agency and Negligent Hiring, Retention and Training claims. (DE 7).

2

ROYAL also asserted the case was governed by the Death on the High Seas Act and accordingly moved to strike the demand for a jury trial. *Id.*

The District Court entered an Order dismissing the Negligent Medical Care and Treatment claim with prejudice and the Apparent Agency and Negligent Hiring, Retention and Training claims without prejudice. (DE 24). The District Court provided FRANZA leave to file an amended complaint within fourteen (14) days. *Id.* FRANZA elected to stand on her pleading and the Court entered an Order dismissing the case. (DE 25). FRANZA then filed her Notice of Appeal. (DE 26).

## SUMMARY OF THE ARGUMENT

*Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988) is the landmark case cited for the principle that liability cannot be imposed upon a carrier or ship owner under the doctrine of *respondeat superior* for the negligence of a ship's doctor in the treatment of the ship's passengers. This rule is well-settled general maritime law. The only Circuit Courts of Appeal to address the rule - the Second, Fifth, and Ninth – all agree with it.  For nearly a century, admiralty courts have applied and upheld the same principle. This Court should as well.

The primary consideration for what is known as the *Barbetta* rule is a shipowner lacks the expertise and control over the physician-patient relationship. This fact is and will always be true, for a shipowner is not in the business of providing medical care. No amount of technology grants a shipowner the right to or actual control over a doctor's practice of medicine sufficient to give rise to vicarious liability.

Apparent agency is just a species of *respondeat superior* and *Barbetta* similarly precludes such a claim. It does not matter whether a ship's physician is an actual agent, apparent agent, or employee, under maritime law the shipboard doctor's liability is not be imputed to the carrier. Regardless, if such a claim exists, FRANZA did not adequately plead one in the Court below.

For these reasons, this Court should uphold *Barbetta* and affirm.

4

## ARGUMENT

## I. THIS COURT SHOULD AFFIRM BECAUSE THE *BARBETTA* RULE IS CORRECT.

### a. *General Maritime Law Applies*

The Parties are in agreement that the present action is substantively controlled by United States general maritime law. (Br. at 10); *see also, Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249 (1972); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Sisson v. Ruby*, 497 U.S. 358 (1990); *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1334 (11th Cir. 1984).

### b. *The Barbetta rule is correct and there are no compelling reasons to alter the landscape of general maritime law*

FRANZA concedes the law is settled, but argues for modification, urging this Court to disregard *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir. 1988) in favor of the flawed minority view fueled by *Nietes v. American President Lines, Ltd.,* 188 F.Supp. 219 (N.D. Cal. 1959). The argument should be rejected as it has been on countless other occasions.

It is well-settled that "general maritime law does not impose liability under the doctrine of *respondeat superior* upon a carrier or ship owner for the negligence

5

of a ship's doctor who treats the ship's passengers." *Barbetta,* 848 F.2d at 1372.[1]
This rule has been adopted by not only the Fifth Circuit, but also the Ninth and
Second Circuit Courts of Appeal as well. *See The Great Northern*, 251 F. 826 (9th
Cir. 1918); *The Korea Maru*, 254 F. 397 (9th Cir. 1918); *Cummiskey v. Chandris,
S.A.*, 719 F. Supp. 1183 (2d Cir. 1990).

The Ninth Circuit in *The Great Northern* and *The Korea Maru* advanced the
rule that a shipowner's duty is to take reasonable care in the employment of
medical staff on board the vessel, and liability exists only for the neglect of that
duty, not the for the neglect of the doctor in providing medical treatment. *See The
Great Northern,* 251 F. at 831; *The Korea Maru,* 254 F. at 399.

Like here, the appellant in *Cummiskey* urged the Second Circuit to abandon
the well-established maritime rule that the negligence of a shipboard doctor in
treating passengers is not to be imputed to the ship's owner or operator. 95 F.2d at
108, citing *Barbetta.* The Court declined to do so holding, "[o]n the facts before

---

[1] While *Barbetta* was not decided until 1988, the general principles espoused date
back over a century. *See Laubheim v. De Koninglyke Neder Landsche Stoomboot
Maatschappy*, 107 N.Y. 228, 13 N.E. 781 (1887); *O'Brien v. Cunard Steamship
Co.*, 154 Mass. 272, 28 N.E. 266, 267 (1891); *The Napolitan Prince*, 134 F. 159,
160 (E.D.N.Y.1904); *The Korea Maru*, 254 F. 397, 399 (9th Cir.1918); *The Great
Northern*, 251 F. 826, 830-32 (9th Cir.1918); *Churchill v. United Fruit Co.*, 294 F.
400, 402 (D. Mass.1923); *Branch v. Compagnie Generale Transatlantique*, 11 F.
Supp. 832 (S.D.N.Y.1935); *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp.
1033, 1042 (S.D.N.Y.1969); *Cimini v. Italia Crociere Int'l S.P.A.*, 1981 A.M.C.
2674, 2677 (S.D.N.Y.1981); *Di Bonaventure v. Home Lines, Inc.*, 536 F. Supp.
100, 103-04 (E.D. Penn.1982).

us, we decline the invitation to break with maritime precedent, and we affirm the judgment of the district court in all respects." *Id.*

Further, the United States Supreme Court touched on the issue in *De Zon v. American President Lines, Ltd.*, 318 U.S. 660, 63 S. Ct. 814, 87 L. Ed. 1065 (1943), a seaman's Jones Act case. The Supreme Court in *De Zon* drew a distinction between a shipowner's potential liability for its doctor's treatment of a passenger and a crewmember. Deferring to "judges of great learning" of "courts of last resort of states having much to do with maritime pursuits," the Supreme Court cited *Laubheim v. Netherland S.S. Co., 107 N.Y. 228, 13 N.E. 781 (N.Y.Ct.App. 1887) and O'Brien v. Cunard S.S. Co., 154 Mass. 272, 28 N.E. 266 (1891) for the principle that a* ship owner could not be held vicariously liable for the negligence of the ship's doctor because the medical treatment was business between the doctor and the passenger rather than fulfillment of the doctor's duty to the ship.  *See De Zon, 318 U.S.* at 666, n.2; *Carnival Corp. v. Carlisle*, 953 So. 2d 461, 469 (Fla. 2007). While FRANZA questions the foundation upon which *Barbetta* was built *(Br. at 10-12, criticizing Laubheim and O'Brien),* the Supreme Court saw it differently in *De Zon*.

Courts in the Southern District of Florida have overwhelmingly applied the rule as well.[2] Various courts in other jurisdictions have similarly held a shipowner cannot be vicariously liable for the negligence of shipboard medical personnel.[3]

---

[2] *See e.g., Royal Caribbean Cruises, Ltd. v Jackson,* 921 F.Supp. 2d 1366 (S.D. Fla. 2013); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 43487, 8 (S.D. Fla. 2013); *Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 24399 (S.D. Fla. 2013); *Huang v. Carnival Corp.*, 909 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012); *Lapidus v. NCL Am. LLC*, 2012 U.S. Dist. LEXIS 82720 (S.D. Fla. 2012); *Peavy v. Carnival Corp.*, 2012 U.S. Dist. LEXIS 154323 (S.D. Fla. 2012); *Lobegeiger v. Celebrity Cruise Inc.*, 869 F.Supp. 2d 1356 (S.D. Fla. 2012); *Hill v. Celebrity Cruises, Inc*., 2011 U.S. Dist. LEXIS 128744 (S.D. Fla. 2011); *Wajnstat v. Oceania Cruises, Inc*., 2011 U.S. Dist. LEXIS 10900 (S.D. Fla. 2011); *Balachander v. NCL (Bahamas) Ltd*., 800 F. Supp. 2d 1196 (S.D. Fla. 2011); *Ridley v. NCL (Bahamas) Ltd*., 824 F. Supp. 2d 1355, 1362 (S.D. Fla. 2010); *Peterson v. Celebrity Cruises, Inc*., 753 F. Supp. 2d 1245 (S.D. Fla. 2010); *Rinker v. Carnival Corp.*, 2010 U.S. Dist. LEXIS  144190 (S.D. Fla. 2010); *Gliniecki v. Carnival Corp.*, 632 F. Supp. 2d 1205 (S.D. Fla. 2009); *Hesterly v. Royal Caribbean Cruises*, 515 F. Supp. 2d 1278 (S.D. Fla. 2007); *Suter v. Carnival Corp*., 2007 U.S. Dist. LEXIS 95893 (S.D. Fla. 2007); *Hajtman v. NCL (Bahamas) Ltd*., 526 F. Supp. 2d 1324 (S.D. Fla. 2007); *Walsh v. NCL (Bahamas) Ltd.,* 466 F. Supp. 2d 1271 (S.D. Fla. 2006); *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367 (S.D. Fla. 2005); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367 (S.D. Fla. 2002); *Doe v. Celebrity Cruises,* 145 F. Supp. 2d 1337 (S.D. Fla. 2001); *Warren v. Ajax Navigation Corp.,* 1995 WL 688421 (S.D. Fla. 1995); *Nanz v. Costa Cruises, Inc*., 1991 AMC 48, 49 (S.D. Fla. 1990), *affirmed without opinion*, 932 F.2d 977 (11th Cir. 1991)(unpublished); *Mascolo v. Costa Crociere, S.p.A.,* 726 F. Supp. 1285 (S.D. Fla. 1989).

[3] *See e.g., In re Cent. Gulf. Lines, Inc*., 176 F. Supp. 2d 599 (E.D. La. 2001); *Malmed v. Cunard Line*, 1995 U.S. Dist. LEXIS 12256 (S.D.N.Y. 1995); *Gillmor v. Caribbean Cruise Line Ltd*., 789 F. Supp. 488 (D.P.R. 1992); *Hilliard v. Kloster Cruise, Ltd.*, 1990 U.S. Dist. LEXIS 21035 (E.D. Va. 1990); *Di Bonaventure v. Home Lines, Inc*., 536 F. Supp. 100 (E.D. Penn. 1982); *Amdur v. Zim Israel Navigation Co*., 310 F. Supp. 1033 (S.D.N.Y. 1969); *Churchill v. United Fruit Co.*, 294 F. 400 (D. Mass. 1923); *Carnival Corp. v. Carlisle*, 953 So. 2d 461, 470 (Fla. 2007).

There is no doubt, *Barbetta* is a "long-established rule in admiralty", "well settled under general maritime law" and a "clear rule of law." *See Mascolo, Doe, and Warren, supra*. "The mere fact that the controlling principals [sic] of law have been in existence for over a century is an indication that the rule is a sound one." *Mascolo*, 726 F. Supp at 1286.

Indeed, there is a reason why *Nietes* stands alone while admiralty courts repeatedly reject it in favor of *Barbetta*. *Nietes* misunderstood the issue central to imposition of vicarious liability - control. "Vicarious liability of a principal for the acts of its agent turns primarily on the ability of the principal to control the acts of the agent." *Fairley v. Royal Cruise Line, LTD*, 1993 AMC 1633, 1635 (S.D. Fla. 1993). Consequently, control is at the heart of the two justifications for the *Barbetta* rule, (1) "the nature of the relationship between the passenger and the physician, and the carrier's lack of control over that relationship," and (2) a shipping company's lack of "expertise requisite to supervise a physician or surgeon carried on board a ship...." *Barbetta*, 848 F. 2d at 1369, *quoting Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. at 1042.

> The reason, of course, that both justifications for the general rule are tied to the concept of control is that respondeat superior liability is predicated upon the control inherent in a master-servant relationship. Because it would be inconsistent with the basic theory of respondeat superior liability to impose responsibility vicariously where the "master"--that is, the ship owner or carrier--lacks the ability to

> meaningfully control the relevant actions of its "servant"--that is, the ship's doctor--...courts have refused to do so.

*Id*. (citation omitted). Court after court has agreed that although a shipowner may control certain aspects of a doctor's employment, ultimately it cannot control the doctor's practice of medicine. Despite FRANZA's reliance on *Fairley* dicta, Judge Marcus acknowledged this point in the holding:

> The degree of skill peculiar to the doctor may, insofar as vicarious liability is concerned, render his relationship to his employer a breed apart from the less technical master-servant relationships.
> …
>
> The harshness of the [Barbetta] rule can only be justified by the notion that *meaningful* control is a prerequisite to vicarious liability and that -- under any conceivable set of facts, and *even if he is a regular crew-member* -- the carrier has no meaningful ability to control the ship's doctor.

*Id*., 1993 AMC at 1638 (emphasis added). The court in *Malmed v. Cunard Line Ltd.*, No. 91 CIV. 8164 (KMW), 1995 U.S. Dist. LEXIS 12256 (S.D.N.Y. Aug. 22, 1995) (unpublished), elaborated:

> Courts ... have concluded that although a carrier may control certain aspects of a physician's employment -- such as hours, wages, and working conditions -- *the carrier does not control precisely that aspect of the physician's performance at issue in a malpractice or negligence action, that is, his or her practice of medicine*. Because ship owners are not themselves in the business of medicine -- they have no medical training or experience on which they can rely to instruct or supervise the physicians they employ -- they cannot fairly be said to control the doctor's medical practice.

*Id*. at *8 (emphasis added). The court in *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033 (S.D.N.Y. 1969) put to rest the notion - proposed by the judge in *Nietes* - that a shipboard doctor can be supervised from the shore:

> It is pure sophistry to assert that a ship's master is capable of "supervising" the medical treatment rendered by a physician, or that some shore-based "company chief surgeon," by his very existence, is capable of supervising or controlling the actions of a ship's physician. A shore-bound chief surgeon...does not occupy a position of control over a ship's physician sufficiently immediate to warrant equation with the hospital-doctor standard. To pretend, as the *Nietes* case does, that mere employment of a physician by a shipping company. . .creates control, is to create a species of liability without fault which is without precedent."

*Id*. at 1042-43. And, of course, the Fifth Circuit said it best in *Barbetta*:

> We agree with those courts which have concluded that if the carrier's ability to control the doctor's treatment is a necessary prerequisite to imposing liability, liability cannot--as the *Nietes* court would have it--turn on whether the doctor is technically an employee or an independent contractor. Moreover, we also agree with those same courts that in reality, a carrier cannot exercise control over the ship's doctor as he practices medicine; if control is a prerequisite to respondeat superior liability, therefore, the general rule against holding the carrier or ship owner vicariously liable for the doctor's negligence must prevail.

*Id*. at 1371. *See also* Robert D. Peltz and Vincent J. Warger, *Medicine on the Seas*, 27 Tul. Mar. L.J. 425, 446 (Summer 2003) ("the essence of the *Barbetta* court's holding is the recognition that whatever authority a master may have to control the general actions of a ship's doctor, he has neither the ability, expertise, nor the authority to supervise or second guess his medical decisions"). On this

determinative issue, *Nietes*' reasoning is inconsistent and faulty, as *Barbetta*

continued:

> The *Nietes* court claimed to have been led to [its] rule by its
> conclusion that concerns over a carrier's ability to control or supervise
> a professionally skilled physician are not a "realistic basis for the
> determination of liability in our modern, highly organized industrial
> society." *Nietes*, 188 F. Supp. at 220. As the *Nietes* court saw it,
> liability is proper despite the carrier's lack of control because "the
> employment of a doctor aboard ship is a beneficial substitute" for an
> otherwise more costly duty which the shipowner owes to its
> passengers--to provide such care and attention as is reasonable and
> practicable under the circumstances, even if that means changing
> course and putting in at the nearest port. *Id.* at 221…
>
> First of all, we find the *Nietes* court's reasoning to be internally
> contradictory. The court claimed that the carrier's ability to control the
> doctor should not be considered in determining whether to impose
> vicarious liability; instead, as the court expressed it, a carrier must be
> liable for a ship doctor's negligent treatment because the carrier chose
> to discharge its duty to provide its passengers with reasonable medical
> care by bringing the doctor aboard the ship. The policy underlying the
> court's rule, therefore, sounds in strict liability. The rule the *Nietes*
> court actually adopted, however, imposes liability only when the
> carrier has some control over the doctor it brought on board: if the
> carrier pays the doctor's salary, can subject him to discipline, and can
> give him orders, the carrier is responsible for the doctor's negligence.
> Despite its words to the contrary, therefore, the *Nietes* court did
> understand that the control inherent in a master-servant relationship is
> the foundation upon which respondeat superior liability normally
> rests. Consequently, the difference between those courts that have
> refused to impose vicarious liability and the *Nietes* court is that the
> *Nietes* court apparently believed that the employment relationship
> between a carrier and a ship's doctor provides the necessary control.
> We disagree.
>
> *We think that the Nietes court has confused the employer's right to
> control its employees' general actions with its ability to control those
> specific actions which could subject the employer to liability.* In the

case of a ship's doctor, as we explained above, numerous courts have found that the carrier or ship owner lacks both (1) the expertise to meaningfully evaluate and, therefore, control a doctor's treatment of his patients and (2) the power, even if it had the knowledge, to intrude into the physician-patient relationship. The *Nietes* court's only acknowledgement of this, the true difficulty with imposing liability based upon a theory of control, was its "presumption" that the ship's doctor is always linked, through modern means of communication, to a "chief surgeon" with the power to supervise and the discretion to direct the ship's doctor's hand. We think that with this presumption, the *Nietes* court unrealistically presumed away the problem; …

*Barbetta*, 848 F. 2d at 1370-71 (emphasis added). Because *Nietes* and its underlying rationale run contrary to well-entrenched admiralty precedent, this Court should decline to stray from *Barbetta.*

Underlying the issues with the *Nietes* decision is the fact that it took forty-five years before another court agreed. The first of three Courts to follow *Nietes* was *Carlisle v. Carnival Corp.,* 864 So.2d 1 (Fla. 3d DCA 2004), which was overruled by Florida's Supreme Court in *Carnival Cruise Line v. Carlisle*, 953 So.2d 461 (Fla. 2007), *rehearing denied* (Mar 27, 2007), *cert. denied,* 552 U.S. 826, 128 S. Ct. 196, 169 L. Ed. 2d 37 (2007).[4] The Florida Supreme Court recognized that "[a]n impressive number of courts from many jurisdictions have, for almost one hundred years, followed the same basic rule [articulated in *Barbetta*]." *Id.* at 466.

---

[4] As discussed *infra,* FRANZA relies on Robert D. Peltz's law review article *Has Time Passed Barbetta By*?, 24 U.S.F. Mar. L. J. 1, 32 (2012). Notably, Peltz filed an amicus brief in support of upholding *Barbetta* in *Carnival Cruise Line v. Carlisle,* 953 So.2d 461 (Fla. 2007).

Next came *Huntley v. Carnival Corp.,* 307 F.Supp.2d 1372 (S.D. Fla. 2004) relying on the errant District Court decision in *Carlisle*. It has since been rejected by other courts in the Southern District of Florida.[5] What's more, the author of *Huntley*, Judge King himself, subsequently twice rejected its holding in *Balachander v. NCL (Bahamas) Ltd.*, 800 F.Supp.2d 1196, (S.D. Fla. 2011) (King, J) and *Ridley v. NCL (Bahamas) Ltd.*, 2010 WL 4237329, (S.D. Fla. 2010)("[I]t is well recognized that a cruise line cannot be vicariously liable for the negligence of its ship's doctor in the care and treatment of passengers…[t]he reason for the rule against vicarious liability is that cruise lines "have no control over a ship doctor's medical activity, for they lack the expertise.")(internal citations and quotations omitted).

FRANZA's citation to *Mack v. Royal Caribbean Cruises, Ltd.,* 838 N.E. 2d 80 (Ill. App. Ct. 2005), *appeal denied,* 850 N.E. 2d 808 (Ill. 2006), *cert. denied,* 127 S.Ct. 350 (2006) is too a dead end. The Court fully acknowledged its decision was a "depart[ure] from the established rule barring [such] vicarious liability claims." 838 N.E. 2d at 89. The state appellate court mistakenly assumed that because limited cases had followed *Nietes* and its reasoning, it demonstrated that the issue of whether a shipowner may be held vicariously liable for the on-

---

[5] *See e.g. Hesterly v. Royal Caribbean Cruises Ltd.*, 515 F. Supp. 2d 1278 (S.D. Fla. 2007); *Walsh v. NCL (Bahamas) Ltd.*, 466 F. Supp. 2d 1271 (S.D. Fla. 2006); *Doonan v. Carnival Corp.* 404 F.Supp.2d 1367 (S.D. Fla. 2005).

board doctor's medical negligence was not settled, and it was free to follow *Nietes.* *Id.* The "issue" *is*, however, settled maritime law, and the state court, like *Carlisle,* had no right to alter established jurisprudence.  The *Mack* court relied extensively on the flawed reasoning in the now-reversed *Carlisle* and the anomalous decisions of *Nietes* and *Huntley.* 838 N.E. 2d at 89-91.

FRANZA allots great weight to *Fairley's* displeasure with the reasoning of *Barbetta* despite that it actually followed the majority rule. 1993 A.M.C. at 1638-39.  Even if the Court generally agreed with Judge Marcus' dicta, his criticism of *Barbetta* does not support deviating from the rule on the facts *sub judice.* The decedent herein was injured ashore. (DE 1, ¶¶9,10). There was no predicament; no captive audience; port was not distant and the ship's doctor was not the only resort. 1993 A.M.C. at 1638-39.

FRANZA turns to *Barbetta's* reputation among legal scholars as reason to follow *Nietes.*[6] (Br. at 26-27). Notwithstanding that law review articles are not

---

[6] Appellant cites Beth-Ann Erlic Herschaft, *Cruise Ship Medical Malpractice Cases: Must Admiralty Courts Steer by the Star   of Stare Decisis?,* 17 Nova L. Rev. 575 (1992); Thomas A. Dickerson, *The Cruise Passenger's Dilemma: Twenty-First-Century Ships, Nineteenth- Century Rights,* 28 Tul. Mar. L.J. 447 (2004); Michael J. Compagno, *Malpractice on the Love Boat: Barbetta v. S/S Bermuda Star,* 14 Tul. Mar. L.J. 381 (1990); Thomas A. Gionis, *Paradox on the High Seas: Evasive Standards of Medical Care - Duty Without Standards of Care; a Call for the International Regulation of Maritime Healthcare Aboard Ships,* 34 J. Marshall L. Rev. 751(2001); Robert D. Peltz, *Has Time Passed Barbetta By*?, 24 U.S.F. Mar. L. J. 1, 32 (2012).

binding authority, their utility is limited. For example, FRANZA cites Robert D.

Peltz, *Has Time Passed Barbetta By*?, 24 U.S.F. Mar. L. J. 1 (2012) for the

proposition that recent technological advancements and Congressional enactment

expose "the fallacy of the *Barbetta* holding." (Br. at 27).  Peltz, however, was a

long-time maritime defense attorney who recently decided to test the waters of the

plaintiffs' bar.  His opinion of *Barbetta* was drastically different before the switch:

> It is pure sophistry to assert that a ship's master is capable of "supervising" the medical treatment rendered by a physician, or that some shore-based 'company chief surgeon,' by his very existence, is capable of supervising or controlling the actions of a ship's physician. A shore-bound chief surgeon may indeed be capable of setting forth general medical procedures of engaging the services of competent physicians, and of prescribing the contents of the ship's medical chest; but he does not occupy a position of control over a ship's physician sufficiently immediate to warrant equation with the hospital-doctor standard. To pretend, as the *Nietes* case does, that mere employment of a physician by a shipping company ... creates control, is to create a species of liability without fault which is without precedent.

Robert D. Peltz, *Medicine on the Seas*, 27 Tul. Mar. L. J. 425 (2003), quoting

*Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033 (S.D.N.Y. 1969). Only 9

years have passed between Peltz's two articles and the state of the law has not

changed. Courts consistently uphold and apply *Barbetta* and its progeny.

FRANZA's reliance on *Has Time Passed Barbetta By*? is marginalized by the

conflicting works by the same author.

---

Hence the reason Courts follow decisional law, not scholarly criticism. *American Trucking Ass'ns, Inc. v. Larson,* 683 F.2d 787, 790 (3d Cir. 1982) ("we are not free to exercise the same license as scholars in disregarding still binding precedent"); *Cargill, Inc. v. Offshore Logistics, Inc.,* 615 F.2d 212, 215 (5th Cir. 1980) ("[t]he Appellant…cites us to many scholarly criticisms…, but we are bound by the former decisions of this court"); *Rader v. Johnston,* 924 F. Supp. 1540, 1549 n.19 (D. Neb. 1996) ("[a]lthough the majority opinion in *Smith* has been harshly criticized by virtually every legal scholar and commentator addressing the decision …there is no question that the *Smith* decision is valid, binding precedent at this time").

Relying on Peltz, FRANZA argues the Cruise Vessel Security and Safety Act, 46 U.S.C. §§ 3507, 3508 now requires physicians onboard cruise ships as a matter of law; therefore the underpinnings of *Barbetta* have been eroded by Congressional enactment. (Br. at 27-28). *Thomas v. Carnival Corp,* Case No. 10-22018, DE 71 (S.D. Fla. 2011) (Martinez, J.) (unpublished) holds otherwise and is persuasive. The court held 46 U.S.C. § 3507(d)(3) "does not establish that common carriers are now in the business of treating sick passengers… [and] merely requires, as *Barbetta* does for those carriers who do employ doctors, that the medical personnel possess certain qualifications." *Id.* at 7; *see also Barbetta,* 848 F.2d at 1370. *Thomas* continues: "[n]othing in § 3507(d)(3) contradicts the rule in

*Barbetta* that is relevant in this case, namely that a ship owner is not liable for the negligence of a duly qualified doctor." *Id.* at 7 (citing *Wilhelm Pudenz, GmbH v. Littlefuse Inc.,* 177 F.3d 1204, 1210 (11th Cir. 1999) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.")).

Like *Thomas,* the issue on appeal is not whether ROYAL failed to provide medical personnel. Appellee did provide medical personnel. (DE 1, ¶¶ 6, 7, 11, 12, 15). FRANZA's claim for negligent hiring/retention of medical staff was not dismissed as a matter of law, but for inadequate pleading. (DE 24). Moreover, FRANZA chose not to re-plead (DEs 24, 25) and elected to abandon her negligent hiring/retention claim as noted in her Brief. (Br. at 7, n.1). Accordingly, 46 U.S.C. §§ 3507, 3508 neither affects the *Barbetta* rule nor the issues for determination on appeal.

FRANZA's argument that the Bahamian Merchant Shipping Act of 1976 requires a duly qualified medical practitioner is similarly misplaced. (Br. at 28). Notwithstanding the application of U.S. General Maritime Law, a doctor was in fact aboard. (DE 1, ¶¶ 6, 7, 11, 12, 15).  And, while the Bahamian Merchant Shipping Act requires the presence of a doctor, it does not mandate vicarious liability for his or her negligence.

18

FRANZA also makes much ado about technological advances in the practice of medicine and in communication such that shore-based medical departments now have the expertise and requisite control to meaningfully evaluate patients at sea. (Br. at 28-31). FRANZA asserts technology, like tele-medicine, is somehow proof the principals of *Barbetta* are outdated. This argument misses the mark and has been foreclosed as a matter of law: all the technology in the world does not give a shipowner control over the doctor/patient relationship.  *See Barbetta,* 848 F.2d at 1371. In *Thomas*, the same argument was presented and rejected:

> The Court notes that improvements in monitoring technology, such as Skype, do not provide the ship's crew with additional medical expertise. Accordingly, having considered Plaintiff's arguments in favor of overturning *Barbetta*, this Court will nevertheless adhere to the majority rule presently in force in this circuit.

*Thomas v. Carnival Corp.*, Case No. 10-22018, DE 71 (S.D. Fla. 2011) (Martinez, J.) (unpublished); *see also, Huang, supra,* (rejecting the argument that advances in technology merit a departure from the *Barbetta* doctrine).

The use of tele-medicine or instantaneous communication with land-based doctors[7] does not give a cruise line control over the physician-patient relationship that exists between a shipboard physician and a passenger-patient. Vicarious

---

[7] Whether by telegraph, telephone, or tele-medicine, communication with some other doctor, somewhere off the ship does not give the shipowner more control. It likewise does not equate to more expertise. Whoever is on the other line is still a doctor, and shipowner is still a shipowner. There is still no control by the shipowner over the doctor-patient relationship.

liability cannot be found without control. This principle has sustained the *Barbetta* rule over time and despite technology. The facts remain that a cruise ship, as a matter of law, is not a floating hospital and is not in the business of providing medical services to its passengers.[8]

In this spirit of change, FRANZA discounts the principle of uniformity as a "notoriously mythical concept." (Br. at 23). The norm itself however is as resilient as the very admiralty tenets it seeks to unify: "the Constitution not only contemplated but actually established" a "harmony and uniformity" of law throughout the admiralty jurisdiction. *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 164 (1920); *United States v. Sharpnack*, 355 U.S. 286, 299, n.10 (1958).

The purpose of admiralty jurisdiction remains to provide for the uniform application of general maritime law. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902 (11th Cir. 2004); *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619, 623, 133 L. Ed. 2d 578 (1996) ("With admiralty jurisdiction . . . comes the application of substantive maritime law." (quoting *E. River S.S. Corp. v.*

---

[8] *See Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367 (S.D. Fla. 2005) (Martinez J.) ("The justification for this rule are the cruise line's lack of control over the doctor patient relationship and the cruise line's failure to possess expertise in supervising the doctor in his practice of medicine."); *Hesterly v. Royal Caribbean Cruises, Ltd.,* 515 F.Supp.2d 1278, 1285 (S.D. Fla. 2007) (rejecting characterization of cruise line as medical care provider); *Wajnstat v. Oceania Cruises*, 2011 U.S. Dist. Lexis 10900 (S.D. Fla. 2011) (holding that a cruise ship is not a floating hospital and is not in the business of providing medical services to its passengers); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 43487, 8 (S.D. Fla. 2013) ("a ship is not a 'floating hospital.'").

*Transamerica Delavel Inc*., 476 U.S. 858, 864, 106 S. Ct. 2295, 2298-99, 90 L. Ed. 2d 865 (1986))). This body of law serves to protect commercial activity by ensuring that uniform rules of conduct are in place. *Exec. Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 269-70, 93 S. Ct. 493, 505, 34 L. Ed. 2d 454 (1972); *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Raft of Log*s, 709 F.3d 1055, 1061 (11th Cir. 2013). As explained by the United States Supreme Court in *U.S. v. Locke*, 529 U.S. 89, 99 (2000):

> … the federal interest [in maritime commerce] has been manifest since the beginning of our Republic and is now well established. The authority of Congress to regulate interstate navigation, without embarrassment from intervention of the separate States and resulting difficulties with foreign nations, was cited in the Federalist Papers as one of the reasons for adopting the Constitution... *The Federalist* Nos. 44, 12, 64.

Uniformity of maritime law is not a myth. Since the beginning, the United States Supreme Court deemed the principle of paramount importance. Without it the federal legal system envisioned by our Constitution would not properly function:

> … That we have a maritime law of our own, operative throughout the United States, cannot be doubted. The general system of maritime law which was familiar to the lawyers and statesman of the country when the Constitution was adopted, was almost certainly intended and referred to when it was declared in that instrument that the judicial power of the United States shall extend 'to all cases of admiralty and maritime jurisdiction.' …

> *One thing, however is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country.* It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States.

*The Lottawanna*, 88 U.S. 558, 574-5 (1974)(emphasis added). Indeed, the Supreme Court continues to make uniformity in maritime law a priority. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995); *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 28 (U.S. 2004).

At the same time, it is not disputed that the Supreme Court has recognized it *may* change maritime law in its operation as an admiralty court. *See Edmonds* v. *Compagnie Generale Transatlantique*, 443 U.S. 256, 271, 99 S. Ct. 2753, 61 L. Ed. 2d 521 (1979); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 508, n.21 (2008); *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 432 n.11 (U.S. 2009). This is not, however, a license to disregard uniformity, the cornerstone of admiralty law. The Supreme Court qualified its discretion: "Where there is a need for a new remedial maritime rule, past precedent argues for our setting a judicially derived standard, subject of course to congressional revision." *Exxon*, 554 U.S. at 508, n.21 (citing *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 409 (1975)) (emphasis added).

22

With *Barbetta*, there is no need for remedial action; there is no defective or mislaid cause of action rendering the landscape of the law incomplete. The weight of authority over the last century - the Second, Fifth, and Ninth Circuits, *see* p. 6, *supra,* and the countless District Court opinions[9] – in favor of *Barbetta* proves it.

Moreover, merely because *Barbetta* bars a claim for vicarious liability does not mean a shipowner assumes no responsibility. A shipowner can control who it hires, and if choosing to do so, it must hire competent, duly qualified doctors, or liability will be found. "If the carrier breaches [this] duty, it is responsible for its own negligence." *Barbetta*, 848 F.2d at 1369. Passengers are not without remedy.[10]

FRANZA highlights *Reliable Transfer Co.* to demonstrate that deviation from outdated maritime precedent is possible. (Br. at 23-25). There, the Supreme Court overruled the unquestionably archaic divided-damages rule, set forth in *The Catharine*, 58 U.S. 170 (1854), under which damages were divided equally among concurrent maritime tortfeasors without any attempt to determine the parties' proportional fault. 421 U.S. at 397-98, 410-11. Stating that this rule "has continued to prevail in this country by sheer inertia rather than by reason of any intrinsic

---

[9] *See* footnotes 1, 2, *supra*.

[10] Of course, passengers also have the right to sue the medical staff involved directly.

23

merit," the Court noted that the rule had been "repeatedly criticized by experienced federal judges who have correctly pointed out that the result it works has too often been precisely the opposite of what the Court [has] sought to achieve - ...- the 'just and equitable' allocation of damages." 421 U.S. at 410-11. Recognizing that this goal could be more nearly realized by a standard that allocated liability for damages according to comparative fault whenever possible, the Supreme Court established the rule of proportional fault for admiralty collision cases. 421 U.S. at 411.

Historically, modification of established maritime precedent serves to promote the aims of maritime law. Unlike *Reliable Transfer* though, upholding *Barbetta* is fully consistent with maintaining the uniformity of maritime jurisprudence as it has been routinely commended and followed by federal judges for over a century. There is no compelling need to alter this well-settled maritime rule. Like *Cummiskey*, 895 F.2d 10 (2d Cir. 1990), the most recent Circuit Court to uphold it, this Court should decline the invitation to break from *Barbetta*.

Finally, FRANZA argues this Court should embrace the common law principles contained in the Restatement (Second) of Agency Section 220 describing relationships giving rise to vicarious liability as recognized in *Langfitt v. Federal Marine Terminals, Inc.,* 647 F.3d 1116, 1121 (11th Cir. 2011). (Br. at 25-26). Nothing in the Restatement changes the outcome of the *Barbetta* analysis

24

however. The first prong for finding an employer-employee relationship is "direct evidence of the principal's right to or actual exercise of control." *Langfitt, supra.* Because a ship owner lacks the right to control a ship board physician's medical care, the analysis stops short.

This is best exemplified in *Metzger v. Italian Line*, 1976 AMC 453 (S.D.N.Y.), *aff'd mem.*, 535 F.2d 1242 (2d Cir. 1975) where the Second Circuit addressed the question of whether the ship's master had the right to overrule a medical decision of the ship's doctor. A family was severely injured ashore and transported to a local Jamaican hospital. Given the extent of the injuries, the hospital's attending physician and the ship's physician conferred and decided the wife and son should remain in Jamaica at the hospital. Over the family's objection, the ship board doctor refused to allow them to reboard. The Court then rejected the passengers' suit against the cruise line noting the vessel's master lacked the specialized expertise to make medical decisions and therefore could not overrule the doctor's decision. Even assuming the ship's physician to be negligent, the carrier could not be held vicariously liable for the physician's negligence as it lacked the ability to control the doctor's treatment and orders to the injured passengers.

Indeed, a ship owner has no right to tell a doctor how to do his job; a ship owner is not qualified to interfere with a course of treatment selected between the

25

passenger and the doctor; the confidential nature of the physician-patient relationship precludes it - all this being true, control is lacking.  Accordingly, there can be no vicarious liability of a carrier for the negligence of a shipboard doctor. *See also, Cummiskey*, 719 F. Supp. at 1190; *O'Brien*, 28 N.E. at 267 ("The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it."); *Nanz v. Costa Cruises, Inc*., 1991 AMC 48, 50 (S.D. Fla. 1990), *affirmed without opinion*, 932 F.2d 977 (11th Cir. 1991)(unpublished)("the shipowner/operator is without expertise to exercise control over the ship's doctor and the on board medical staff."). *Barbetta* is correct and the rule should remain intact.

## II.    *BARBETTA* PRECLUDES A CLAIM UNDER THE THEORY OF APPARENT AGENCY BECAUSE IT IS A SPECIES OF *RESPONDEAT SUPERIOR*.  IF SUCH A CLAIM EXISTS, FRANZA DID NOT ADEQUATELY PLEAD ONE IN THE COURT BELOW.

### a.    *Barbetta bars apparent agency claims as a matter of law*

The right to sue under apparent agency is not well-established as asserted by FRANZA. (Br. 32). ROYAL acknowledges courts in the Southern District of Florida have in specific instances permitted claims of apparent agency to survive the pleading stage. More than a few Courts, though, have held the opposite to be

true reasoning *Barbetta* precludes the theory as a matter of law.[11] The Court in

*Wajnstat v. Oceania Cruises*, 2011 U.S. Dist. LEXIS 10900 (S.D. Fla. 2011)

explains:

> The Rule of *Barbetta* does not allow for liability under an apparent
> agency theory since the doctrine of apparent agency is a simply a form
> of *respondeat superior* liability. *See 3 Am. Jur. 2d Agency § 262*. In
> other words, it does not matter whether the ship's physician is an
> actual agent, apparent agent, or otherwise, under maritime law the
> shipboard doctor's liability is not be imputed to the carrier. **The
> rationale of the court in *Barbetta* does not leave room for pleading
> around the rule, by labeling the legal theory "apparent authority"
> as opposed to "*respondeat superior*."**

*Wajnstat* at *11-12; (emphasis added).  *Balachander v. NCL (Bahamas) Ltd*., 800

F.Supp.2d 1196, (S.D. Fla. 2011) saw it the same way and dismissed an apparent

agency claim against the cruise line holding apparent agency is "akin to claims

under the doctrine of *respondeat superior* and fail as a matter of law." *Id.* at *13-14

(stating that "under any theory, it is inconsistent with the law of this Circuit to hold

a cruise line liable for the negligence of a ship doctor."). This principle was

reaffirmed in *Hill v. Celebrity Cruises*:

> [I]t would be illogical to hold Celebrity liable under a theory of
> apparent agency when clearly established maritime law precludes
> liability under a theory of actual agency.  Celebrity would have no

---

[11] *See e.g., Huang v. Carnival Corp.* 2012 U.S. Dist. LEXIS 176566 at n. 2 (S.D.
Fla. 2012)(noting that "the trend does seem to be toward reading the *Barbetta* Rule
itself as a bar to any form of vicarious liability for the actions of medical staff,
regardless of the doctrinal label affixed to the particular claim.")

> incentive, and in fact would be discouraged, from providing doctors
> on board their cruises if they are held liable for them under a theory of
> apparent agency.   Under current maritime law, cruise lines are
> afforded some protection from the mistakes of their onboard
> physicians.

*Hill*, 2011 U.S. Dist. LEXIS 128744 *5-6 (S.D. Fla. Nov. 7, 2011); *see also Huang*

*v. Carnival Corp.,* 2012 U.S. Dist. LEXIS 176566 ("Absent an explicit

manifestation by the ship owner countering the settled principle that medical staff

are not their agents, it is unreasonable *as a matter of law* for a passenger to believe

that the medical staff are the ship owner's agents) (emphasis in original). *Barbetta*

prevents a passenger from bringing a claim against a cruise line for the negligence

of their shipboard doctors under any theory. Notwithstanding argument below,

ROYAL requests this Court find FRANZA's claim for apparent agency cannot be

stated as a matter of law either.

### b.    The District Court properly ruled that FRANZA did not adequately plead a claim of apparent agency

If such a claim exists, FRANZA did not adequately plead one. To state a

claim for apparent agency, a plaintiff must allege (1) that the alleged principal

makes some sort of manifestation causing a third party to believe that the alleged

agent had authority to act for the benefit of the principal, (2) that such belief was

reasonable, and (3) that the plaintiff reasonably acted on such belief to his

detriment. *See Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS

8136, 10-11 (S.D. Fla. Jan. 2, 2013); *Warren v. Ajax Navigation Corp*., 1995 U.S. Dist. LEXIS 19535 *7 (S.D. Fla. 1995); *Cactus Pip & Supply v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) (citing Restatement (Second) of Agency §27)).

As an initial matter, the District Court's Order prefaced its holding with "[e]ven assuming that the Complaint establishes the first and second elements of apparent agency – i.e., that Royal Caribbean made certain manifestations leading Vaglio to reasonably believe that the medical staff were Royal Caribbean's agents… ." DE 24, p.9. ROYAL asserts the first two elements were not in fact met.

The Complaint sets forth various manifestations allegedly made by ROYAL with respect to the shipboard medical staff, to wit: the shipboard medical staff wore ROYAL uniforms and the doctors and nurses are permitted to eat with the ship's crew, among other boilerplate assertions. (DE 1, ¶¶26-36). The Complaint does not assert how or why these manifestations caused the decedent[12] to believe that the medical staff had the authority to act for the benefit of the principal. The Complaint states in conclusory fashion that decedent "believed, and was reasonable in his belief, that the ship's nurse and doctor were acting as direct

---

[12] The Complaint asserts the representations were made to the Plaintiff, rather than to the decedent. Here and below, ROYAL assumes the Plaintiff intended to allege that the representations were made to the decedent.

employees or actual agents on behalf of the Defendants (sic)". (DE 1, ¶37). The

Complaint does not plead facts supporting reasonable reliance.

This is particularly true in light of the Passenger Ticket Contract, which

states in pertinent part:

> a. Availability of Medical Care. Due to the nature of travel by sea and
> the ports visited, the availability of medical care onboard the Vessel
> and in ports of call may be limited or delayed and medical evacuation
> may not be possible from the Vessel while at sea or from every
> location to which the Vessel sails.

> b. Relationship with Service Providers. To the extent Passengers
> retain the services of medical personnel or independent contractors on
> or off the Vessel, Passengers do so at their sole risk. **Any medical
> personnel attending to a Passenger on or off the Vessel, if
> arranged by Carrier, are provided solely for the convenience of
> the Passenger, work directly for the Passenger, and shall not be
> deemed to be acting under the control or supervision of the
> Carrier, as Carrier is not a medical provider**.

(DE 7-1 at ¶4). (emphasis added). Because the ticket contract states ROYAL does

not supervise or control the shipboard medical staff, FRANZA's purported belief

was unreasonable. *Wajnstat* persuasively speaks to the point:

> The passenger ticket contract between Mr. Wajnstat and Oceania
> Cruises clearly explains that the ship's physician and shipboard
> medical personnel are independent contractors, and that Oceania
> Cruises was "**not responsible**" for any actions taken by the onboard
> medical staff. Despite Mr. Wajnstat's allegations that Dr. Lidstromer
> was the apparent agent of Oceania Cruises because he was dressed in
> a uniform similar to other officers of the crew, was identified as the
> ship's doctor, or that the medical staff took notes on Oceania Cruises
> stationary, Mr. Wajnstat was informed by Oceania Cruises that the
> cruise line was not responsible for any examination, advice, diagnosis,
> medication, or treatment that was furnished by the Doctor.

*See Wajnstat v. Oceania Cruises*, 2011 U.S. Dist. Lexis 10900 (S.D. Fla.2011).

*Hajtman* also dismissed an apparent agency claim citing similar language in a passenger ticket contract, "this contractual language serves as notice to Plaintiff that no agency relationship exists between" the shipowner and the ship doctors. 526 F. Supp. 2d 1324, 1329. *Hajtman* noted similar language was also before the court in *Barbetta*, where the Court stated, "We note only that because there was no liability to disclaim, the contractual provision is not a disclaimer; it is instead, merely an accurate restatement of the principles of general maritime law which we have reviewed above." *Id*. (quoting *Barbetta*, 848 F.2d at 1372).[13]

ROYAL expressly advised FRANZA that the shipboard medical staff consisted of independent contractors whom ROYAL neither supervised nor controlled. FRANZA's belief that an agency relationship existed was unreasonable and the elements were not adequately plead. The claim fails as a matter of law in any event. *See Huang*, 2012 U.S. Dist. LEXIS 176566 at *11-12("(a)bsent an explicit manifestation by the ship owner countering the settled principle that

---

[13] Relying on *Fairley, supra*, FRANZA argues or at least implies the exculpatory language in the ticket contract is unenforceable pursuant to 46 U.S.C § 30509. (Br. at 21). ROYAL does not seek to enforce the language of the ticket contract as a disclaimer though. Rather, as *Barbetta* held, FRANZA's alleged belief that the shipboard physician was ROYAL's agent was unreasonable given the ticket contract language.

medical staff are not their agents, it is unreasonable as a matter of law for a passenger to believe that the medical staff are the ship owner's agents."). ROYAL asserts the first two prongs of the analysis were not and cannot be sufficiently stated.

The District Court correctly ruled that FRANZA did not adequately plead how the decedent "acted or relied on its purported belief." (DE 24, p.8). Stated another way, no reasonable detrimental reliance was plead. The Complaint reads:

> That the Plaintiff relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice of the nurse and/or physician who did not seek any further medical testing or evaluation while the ship was in Bermuda, that he relied on the ship's nurse and/or physician, that he did not follow up with the ship's medical staff as he was told that he did not have a serious injury.

DE 1, ¶38. These statements allege reliance on *medical advice*, not on a manifestation causing the decedent to believe the doctor/agent had authority to act for principal/cruise line; there is no reliance on the *agency relationship* alleged. *See Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 8136, 12-13 (S.D. Fla. Jan. 2, 2013); *Gavigan v. Celebrity Cruises, Inc.*, 843 F. Supp. 2d 1254, 1262-63 (S.D. Fla. 2011) ("While Plaintiff alleged that Gavigan 'relied upon [Celebrity's] representations' that the doctors were Celebrity's agents, the Amended Complaint fails to contain the necessary factual allegations describing his reliance

on the agency relationship to his detriment."); *Rinker v. Carnival Corp.*, 836 F. Supp. 2d 1309, 1319 (S.D. Fla. 2011) ("Plaintiff's husband does not state that, had he known the doctor and nurses were independent contractors, he would not have sought their medical help for his wife. Thus, it is not clear how he relied.").

In its Brief, FRANZA attempts to manipulate the facts to create detrimental reliance, arguing that **the decedent** detrimentally relied by "failing to seek care ashore in Bermuda, rather than on the vessel". (*See* Br. at 35). To be clear, the Complaint does not allege this fact, it alleges that the **nurse and/or physician** "did not seek any further medical testing or evaluation while the ship was in Bermuda... ." (DE 1, ¶38). There is critical and perilous difference between the two. Based on what was actually alleged, the District Court correctly ruled FRANZA did not plead how the decedent relied upon the agency relationship; there are no alleged facts indicating that had the decedent known that the doctor and nurse were not agents of ROYAL, he would have changed his position. FRANZA did not adequately plead a claim for apparent agency.

FRANZA argues various Florida state law hospital emergency room cases where apparent agency has been found in a medical malpractice context. (Br. at 34-35). Because some Florida courts hold that separate proof of reliance and detriment are unnecessary in a hospital context, FRANZA argues the same should hold true on a cruise ship. *Id.* These cases are inapposite because, as admiralty courts have

33

long held, a cruise ship is not a floating hospital. *See e.g., O'Brien v. Cunard S.S. Co.*, 28 N.E. 266, 267 (Mass. 1891)("The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it."); *Amdur v. Zim Israel Navigation Co.*, 310 F. Supp. 1033 (S.D.N.Y. 1969) ("A ship is not a floating hospital"); *Wajnstat v. Oceania Cruises*, 2011 U.S. Dist. Lexis 10900 (S.D. Fla. 2011) (holding that a cruise ship is not a floating hospital and is not in the business of providing medical services to its passengers); *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 U.S. Dist. LEXIS 43487, 8 (S.D. Fla. 2013) ("a ship is not a 'floating hospital.'").

This Court should affirm the District Court's ruling that FRANZA did not state a valid cause of action based on the theory of apparent agency.

## CONCLUSION

*Barbetta* is well-settled general maritime law. The District Court below was correct. This Court should affirm.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 10,593 words.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 19, 2013, I electronically filed the Answer Brief with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

*/s/ Darren W. Friedman*
Darren W. Friedman, Esq.
dfriedman@fflegal.com
Marcus G. Mahfood, Esq.
mmahfood@fflegal.com
FOREMAN FRIEDMAN, P.A.
One Biscayne Tower - Suite 2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-6555
Fax: 305-374-9077
*Counsel for Appellee*

## **<u>SERVICE LIST</u>**

Joel M. Barnett, Esq.
waksbar@aol.com
WAKS & BARNETT, P.A.
9900 SW 107 Avenue, Suite 101
Miami, Florida 33176
Tel: 305-670-5550
Fax: 305-670-5552
*Counsel for Appellant*

Philip D. Parrish, Esq.
phil@parrishappeals.com
PHILIP D. PARRISH, P.A.
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Tel: 305-670-5550
Fax: 305-670-5552
*Counsel for Appellant*